IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Justin McBride, #308672, *aka Justin Chase McBride*, ) | Case No. 8:12-02895-RMG-JDA |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Maj. Garry Bryant, Administrator of the ) | |
| Anderson County Detention Center; and ) | |
| the State of South Carolina, ) | |
| ) | |
| Respondents. ) | |

This matter is before the Court on Respondents' motion for summary judgment. [Doc. 22.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on October 11, 2012.  [Doc. 1.]  On February 15, 2013, Respondents filed a motion for summary judgment and a return and memorandum.  [Docs. 21, 22.]  On February 19, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 24.]  Petitioner filed a response in opposition on March 19, 2013.  [Doc. 29.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondents' motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is incarcerated in the Anderson County Detention Center pursuant to orders of commitment from the Clerk of Court for Greenville County.  [Doc. 1 at 1.] Petitioner was indicted in July 2004 for one count of  trafficking marijuana and one count of trafficking cocaine.  [App. 445–48.[1]]  On April 13, 2005, represented by Steve Sumner ("Sumner"), Petitioner proceeded to trial.[2]  [App. 1–408.]  On April 15, 2005, Petitioner and Greene withdrew their pleas of not guilty.  [App. 409–44.]  Petitioner pled guilty to both charges.  [*Id.*]  Petitioner was sentenced to 10 years imprisonment on the trafficking cocaine indictment with a fine of $50,000 and five years imprisonment on the trafficking marijuana indictment with a fine of $10,000, both sentences to be served concurrently. [App. 423, 443.]  No direct appeal was filed.

**PCR Proceedings**

On August 8, 2005, Petitioner filed a pro se application for post-conviction relief ("PCR") in which he alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

(a)    Ineffective assistance of counsel.

(b)    My counsel failed to explain the evidence against me and the ramifications of going to trial or pleading guilty.

---

[1]The Appendix can be found at Docket Entry Numbers 21-1 through 21-3 and 23 through 23-1.

[2]Petitioner was tried jointly with a co-defendant, Darcie Kendel Greene ("Greene").  [App. 1–408.]

(c)    My counsel did not investigate my case.

[App. 451.]   Petitioner alleged as supporting facts that Sumner refused to discuss a defense, told Petitioner there was nothing Sumner could do to prepare, told Petitioner the prosecution did not have a case and did not know why they were taking Petitioner's case to trial, and told Petitioner that it was a dry case because Sumner did not know what evidence would be presented against Petitioner at trial.  [*Id.*]  The State filed a return on October 4, 2005.  [App. 457–61.]

An evidentiary hearing concerning the application was held on July 10, 2007, at which Petitioner was represented by James H. Price, III ("Price").  [App. 462–535.]  At the hearing, testimony was received from Sumner, Joyce Monts, Petitioner, Katherine Elaine James, and Greene.  [*Id.*]  On July 16, 2007, Price submitted a post-trial brief to the PCR court, raising the following issues:

I.    Can a Brady[3] violation be raised in a PCR action?

II.   Can an attorney be deemed ineffective due to the State's failure or refusal to supply discovery information?

[Doc. 21-4 (footnote added).]   On November 29, 2007, the PCR court filed an order denying and dismissing the PCR application with prejudice and finding Petitioner was

---

[3]In *Brady v. Maryland*, the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'"  *Cone v. Bell*, 556 U.S. 449, 451 (2009) (quoting *Brady*, 373 U.S. 83, 87 (1963)).

entitled to seek a belated direct appeal pursuant to *White v. State*, 208 S.E.2d 35 (S.C. 1974).[4] [App. 536–41.]

On December 6, 2007, Petitioner filed a motion to reconsider pursuant to Rule 52(b) of the South Carolina Rules of Civil Procedure. [Doc. 21-5.] In his motion, Petitioner asked the PCR court to reconsider its decision concerning the proper relief for the *Brady* violation and grant Petitioner a new trial. [*Id.*] On December 7, 2007, the State filed a motion to alter or amend the final order. [Doc. 21-6.] The State sought to remove references to wrongful acts by the solicitor and to a finding that Petitioner's guilty plea was involuntarily entered. [*Id.*] The State also filed a return to Petitioner's motion for reconsideration on December 11, 2007. [Doc. 21-7.] The PCR court denied Petitioner's motion for reconsideration on January 4, 2008 and filed amended orders on January 9, 2008 and January 24, 2008 to correct scrivener's errors. [Docs. 21-8; 21-9; 21-11.] The PCR court denied the State's motion to alter or amend on January 24, 2008. [Doc. 21-10.]

Notices of appeal were timely filed and served. [Docs. 21-12; 21-13; *see also* Docs. 21-14; 21-15 (letter and order related to prematurity of initial notice of appeal because of the State's then-outstanding motion to alter or amend).] On September 9, 2008, Elizabeth Franklin-Best ("Franklin-Best") of the South Carolina Commission on Indigent Defense and Price filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issues:

---

[4] In *White v. State*, the South Carolina Supreme Court held that if the PCR court determines that the applicant never voluntarily and intelligently waived his right to appeal, on appeal of the PCR court's decision, the South Carolina Supreme Court will review the trial record as if a direct appeal had been timely perfected to determine if there was reversible error. 208 S.E.2d 35, 39–40 (S.C.1974).

> Is [Petitioner] entitled to a new trial when the solicitor provided his attorney with twenty-one (21) statements on the day of trial, many of which were from witnesses who were not disclosed in the discovery that was provided, and five (5) of which were exculpatory and subject to mandatory disclosure pursuant to *Brady v. Maryland*? Did [Petitioner's] "trial by ambush" render his subsequent plea, two (2) days into the trial, unknowing and involuntary?
>
> Did the judge correctly find that [Petitioner] did not knowingly and voluntarily waive his right to appeal?

[Doc. 21-16 at 2 (footnote omitted).] Additionally, on September 9, 2008, Franklin-Best and Price filed a brief pursuant to *White v. State* on Petitioner's behalf, seeking a belated appeal and raising the following issue:

> Was [Petitioner's] guilty plea rendered involuntary because the State failed to disclose twenty-one (21) witness statements to defense counsel prior to the day of trial, of which five (5) were exculpatory and subject to mandatory disclosure pursuant to *Brady v. Maryland*.

[Doc. 21-17 (footnote omitted).]

On January 28, 2009, the State filed a return to the petition for writ of certiorari and a motion to strike the brief of appellant. [Docs. 21-18; 21-19.] On February 19, 2009, the South Carolina Supreme Court granted the State's motion to strike and ordered Petitioner to file a substitute brief that did not contain references to matters that were not presented to the lower court as part of Petitioner's guilty plea. [Doc. 21-20.] Accordingly, Franklin-Best and Price filed a second brief pursuant to *White v. State* on Petitioner's behalf, raising the following issue:

> Did [Petitioner] knowingly and voluntarily enter his plea of guilty when the trial court judge did not inform him that, in doing so, he was waiving all non-jurisdictional defenses?

5

[Doc. 21-21.]  The State subsequently filed its response brief.  [Doc. 21-22.]  On March 10, 2010, the South Carolina Supreme Court transferred Petitioner's PCR appeal to the South Carolina Court of Appeals.  [Doc. 21-23.]  On January 20, 2012, the South Carolina Court of Appeals denied the petition for writ of certiorari.  [Doc. 21-24.]  Petitioner then filed a petition for rehearing, specifically asking the Court of Appeals to render a decision on the merits of the *White* appeal and to grant the petition for writ of certiorari on the *Brady* issue and allow full briefing on that issue.  [Doc. 21-25.]  The South Carolina Court of Appeals denied the petition on March 15, 2012 [Doc. 21-26] and issued remittitur on May 2, 2012 [Doc. 21-27].[5]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on October 11, 2012 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One**:        Brady Rule 5 Violations
>
> Supporting Facts:    Trial judge had to order state to produce 21 statements both inculpatory and exculpatory in nature approximately 45 minutes before trial started.  Defense was never given audio or video surveillance, Vincent Stephen's statement, and witnesses' plea deals.
>
> **Ground Two**:        Ineffective Assistance of Counsel
>
> Supporting facts:    Counsel could not and therefore did not prepare a defense due to prosecutorial misconduct.  He was thereby ineffective (App. 488, Lines 4–8) See Appendix

---

[5]Petitioner also planned to file a petition for writ of certiorari to the Supreme Court of South Carolina to seek review of the South Carolina Court of Appeals' denial of the original petition for writ of certiorari [*see* Doc. 21-28 (letter from Franklin-Best requesting a thirty day extension to file a petition for writ of certiorari)]; however, the Supreme Court of South Carolina will not review the denial of a petition for a writ of certiorari by the Court of Appeals in a PCR case [*see* Doc. 21-29].

6

p 10. Counsel failed to explain evidence against me and the ramifications of going to trial or pleading guilty. Counsel did not discuss Right to Appeal (App. 494, Lines 507) See Appendix p. 11.

**Ground Three**:   Prosecutorial Misconduct

Supporting facts:   Prosecution knowingly and willingly withheld both exculpatory and inculpatory witness statements (21 in all) until day of trial (App p 497, line 14 – p 510, line 14) See Appendix p12–25. Audio and/or video surveillance with involved individuals other than [Petitioner] was never turned over, nor was a statement written by Vincent Stephens as well as witnesses' plea deals. Both attorneys for Defense motioned for a continuance because they did not feel adequately prepared to defend their clients (App p-15, lines 16–26) See Appendix p21. This practice thereby severely prejudiced the Defendant.

**Ground Four**:   [Petitioner] did not knowingly or voluntarily waive all non-jurisdictional defenses.

Supporting facts:   Trial Court failed to inform [Petitioner] that by entering a Plea of Guilty, he was waiving all non-jurisdictional defenses thereby not allowing [Petitioner] to raise issues of Brady violations, prosecutorial misconduct, variances of indictments and arrest warrants, denial of severance from co-defendant, an invalid unsigned search warrant, or lead investigator's mention multiple times of an unrelated double homicide during trial.

[Doc. 1.]

As stated, on February 15, 2013, Respondents filed a motion for summary judgment. [Doc. 22.] On March 19, 2013, Petitioner filed a response in opposition. [Doc. 29.] Accordingly, Respondents' motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

9

> information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)    (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221

12

S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is

14

barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.

15

In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner

16

must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondents contend Ground 1, the first and second claims in Ground Two, and Ground Three are procedurally barred.  [Doc. 21 at 18–21.] Respondents also argue Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice.  [*Id.* at 22–23.] Petitioner failed to respond to Respondents' argument regarding procedural bar.  [*See* Doc. 29.]  For the reasons explained below, the Court concludes Ground Two is procedurally barred from federal habeas review, and Petitioner has failed to overcome the default.

Grounds One and Three raise essentially the same ground—that a *Brady* violation occurred in this case because the prosecution withheld inculpatory and exculpatory statements until approximately 45 minutes before trial and never provided surveillance

evidence, a witness statement, and witnesses' plea deals—raised as "Brady Rule 5 Violations" in Ground One and "Prosecutorial Misconduct" in Ground Three. Respondents argue this claim was not raised in Petitioner's belated direct appeal and is, therefore, barred from further review. [Doc. 21 at 18–20.] While Respondents are correct that this issue was not raised in Petitioner's belated direct appeal,[7] the issue was raised to the PCR court, which found that "the existence of exculpatory statements was not disclosed to [Petitioner] or his counsel and, accordingly, a significant question arises as to whether his plea was freely and voluntarily enitered." [App. 539–40.] Additionally, this issue was raised in the petition for writ of certiorari. [Doc. 21-16 at 2, 4–9.] Although Respondents appear to argue that this issue is not one properly raised in a PCR application [*see* Doc. 21 at 18 (citing *Drayton v. Evatt*, 430 S.E.2d 517, 519 (S.C. 1993) for the proposition that "issues that could have been raised at trial or on direct appeal cannot be raised in a PCR application absent a claim of ineffective assistance of counsel")], South Carolina courts have addressed *Brady* violations in PCR applications, *see Gibson v. State*, 514 S.E.2d 320 (S.C. 1999) (affirming PCR court's decision to set aside guilty plea and grant a new trial

---

[7]The Court notes Petitioner's first brief pursuant to *White v. State* raised the following issue:

> Was [Petitioner's] guilty plea rendered involuntary because the State failed to disclose twenty-one (21) witness statements to defense counsel prior to the day of trial, of which five (5) were exculpatory and subject to mandatory disclosure pursuant to *Brady v. Maryland*.

[Doc. 21-17 (footnote omitted).] However, as previously stated, the South Carolina Supreme Court granted a motion to strike the original brief and, in Petitioner's second brief, this issue was not raised. [Docs. 21-19; 21-20; 21-21.]

18

based on a *Brady* violation).[8]  Accordingly, because Petitioner presented this claim to the state's highest court, the Court will address the merits of Grounds One and Three.

Ground Two raises three ineffective assistance of counsel claims—(1) "[c]ounsel could not and therefore did not prepare a defense due to prosecutorial misconduct"; (2) "[c]ounsel failed to explain evidence against [Petitioner] and the ramifications of going to trial or pleading guilty"; and (3) "[c]ounsel did not discuss Right to Appeal."  [Doc. 1 at 6.] Respondents argue the first and second claims of Ground Two are procedurally barred [Doc. 21 at 20–21]; however, the Court finds that all three claims raised in Ground Two are procedurally barred.  The claims in Ground Two are procedurally barred because Petitioner failed to properly raise these claims for relief to the state courts.  The first claim of Ground Two was raised to and ruled upon by the PCR court [App. 537–39], but was not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari [*see* Doc. 21-16]; accordingly, this claim is procedurally defaulted.  The second claim of Ground Two was raised to the PCR court, but the PCR court did not rule on Petitioner's claim that counsel failed to explain the evidence and the ramifications of going to trial versus entering a guilty plea.  [*See* App. 536–41.]  Although Petitioner filed a motion to reconsider, the motion to reconsider addressed other issues and did not address this specific claim.  [*See* Doc. 21-5.]  Therefore, the second claim of Ground Two is procedurally defaulted.  *See Marlar*, 643 S.E.2d at 267 (stating that if a PCR court fails to specifically rule on an issue,

---

[8]Here, the PCR court addressed Petitioner's *Brady* violation claim and did not find it procedurally barred because it could have been raised at trial or on direct appeal.  The Court is aware that in *Gibson*, the petitioner did not learn of the *Brady* violation until a civil suit following the guilty plea, 514 S.E.2d at 322, and here, Petitioner knew of the alleged *Brady* violation when he entered his guilty plea.  However, because the PCR court found Petitioner did not knowingly and voluntarily waive his right to a direct appeal in this case and this issue was raised to the PCR court and in Petitioner's petition for writ of certiorari, in an abundance of caution, this Court will address the merits of Grounds One and Three.

"counsel has an obligation . . . to file a Rule 59(e), SCRCP, motion to alter or amend" the order to preserve that issue for appeal). The third claim of Ground Two was raised to and ruled upon by the PCR court [App. 540] but was not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari[9] [*see* Doc. 21-16]; accordingly, this claim is procedurally defaulted. Because the claims of Ground Two were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal habeas review unless Petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred. *See Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 496; *Smith*, 477 U.S. at 533.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)). Here, Petitioner has failed to articulate cause for defaulting Ground Two. Rather, in response to Respondents' motion for summary judgment, Petitioner argues the merits of each ground raised in this habeas petition. [Doc. 29.] Petitioner filed a PCR application and, subsequently, a petition for writ of certiorari in which these issues could have been raised but were not, even though other

---

[9]Although the petition for writ of certiorari addresses whether Petitioner knowingly and intelligently waived his right to appeal, the claim was not raised as an ineffective assistance of counsel claim in the petition for writ of certiorari. [Doc. 21-16 at 10.]

20

issues were properly raised.  Thus, Petitioner has failed to demonstrate sufficient cause for failing to properly raise Ground Two to the South Carolina Supreme Court, and therefore, Ground Two is procedurally barred from federal habeas review.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's

21

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Grounds One and Three**

In Grounds One and Three, Petitioner contends a *Brady* Rule 5 violation occurred in this case due to prosecutorial misconduct when the prosecution withheld inculpatory and exculpatory statements until approximately 45 minutes before trial and never provided surveillance evidence, a witness statement, and witnesses' plea deals.  [Doc. 1 at 5–6, 8–9.]  Respondents argue the alleged Rule 5 violation claim is not cognizable for federal habeas review and that Petitioner is not entitled to relief for the alleged *Brady* violation. [Doc. 21 at 25–32.]

First, to the extent Petitioner alleges a violation of Rule 5 of the South Carolina Rules of Criminal Procedure, the Court agrees his claim is not cognizable for federal review.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

22

United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Accordingly, the Court cannot review a South Carolina court's ruling regarding the State's compliance with Rule 5 of the South Carolina Rules of Criminal Procedure.

With respect to the alleged *Brady* violation, the Due Process Clause requires the State to disclose exculpatory evidence to the defense.[10]  *See Brady*, 373 U.S. at 87. To prove a *Brady* violation, Petitioner must demonstrate that evidence was (1) favorable to him; (2) in the possession of or known by the prosecution, but nevertheless suppressed by the State; and (3) material to his guilt or innocence or was impeaching. *E.g., Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). However, it is questionable whether Petitioner's claim states a constitutional violation, much less a violation of clearly established federal law under § 2254(d)(1).

The Supreme Court has never held that the *Brady* rule requires disclosure of exculpatory evidence prior to the entry of a plea, rather than for use at trial.[11]  To the contrary, the Supreme Court has repeatedly referenced the *Brady* rule as necessary to secure a fair trial before the fact finder. In *Brady*, the Supreme Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available,

---

[10]The Court notes the PCR court found exculpatory statements were not disclosed to Petitioner or his counsel until just before trial and that this belated disclosure calls into question whether Petitioner's plea was freely and voluntarily entered; however, the PCR court found the proper relief was a belated appeal as opposed to a new trial. [App. 539–40.] Accordingly, Petitioner appears to be challenging only the remedy provided by the PCR court and this Court need not specifically address whether a *Brady* violation occurred. Instead, this Court will address only whether Petitioner was entitled to a new trial.

[11]Because Petitioner ultimately entered a guilty plea, the Court analyzes his *Brady* claim in the context of a guilty plea rather than a trial. The Court notes, however, that when the alleged *Brady* violation occurred, Petitioner's case was about to go to trial and, in fact, he entered a guilty plea after two days of trial. As discussed *infra*, Petitioner's guilty plea waives all non-jurisdictional defenses antecedent to the guilty plea; accordingly, this issue is barred from review because Petitioner waived the issue when he entered a guilty plea. Because Petitioner challenges that waiver, however, and in an abundance of caution, the Court addresses the merits of the argument as well.

would tend to exculpate him . . . helps shape *a trial* that bears heavily on the accused." 373 U.S. at 87–88 (emphasis added).  Similarly, in *United States v. Bagley*, the Court explained that "suppression of evidence amounts to a constitutional violation *only* if it deprives the defendant of *a fair trial*."  473 U.S. 667, 678 (1985) (emphasis added). Finally, in *Strickler*, the Court explained that, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different *verdict*."  527 U.S. at 281 (emphasis added).

In *United States v. Ruiz*, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  536 U.S. 622, 633 (2002).  While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence,[12] the Court's reasoning focuses on the *Brady* rule's connection to the truth-finding function of the trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well.  Moreover, several courts have concluded that there is no clearly established federal constitutional right to the disclosure of *Brady* information prior to the entry of a guilty plea, regardless of whether it is exculpatory evidence or impeachment evidence.  *See United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) ("[Petitioner] argues that the limitation of the Court's discussion [in *Ruiz*] to impeachment evidence implies that exculpatory evidence is different and must be turned over before

---

[12] Justice Thomas, concurring in the judgment, saw no reason to distinguish between exculpatory substantive evidence and exculpatory impeachment evidence.  *See Ruiz*, 536 U.S. at 633–34 (Thomas, J., concurring in the judgment).

entry of a plea. *Ruiz* never makes such a distinction nor can this proposition be implied from its discussion."); *Powell v. Graham*, No. 10-cv-1961, 2013 WL 37565, at *15 (E.D.N.Y. Jan. 3, 2013) ("[T]he Supreme Court has never held that exculpatory material (as opposed to impeachment material) must be disclosed prior to a guilty plea. Therefore, a state court decision on that issue could not have been 'contrary to clearly established federal law, as determined by the Supreme Court of the United States.'" (citing 28 U.S.C. § 2254(d)(1))); *see also U.S. v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) ("The *Brady* right, however, is a *trial* right. . . . When a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted." (emphasis in original) (citations omitted)). In light of the reasoning of *Ruiz*, the Court's repeated description of *Brady* as grounded in the right to a fair trial, the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among courts on this issue, it cannot be said that Petitioner has alleged a violation of clearly established federal law under § 2254(d)(1). Thus, Petitioner is not entitled to a new trial on Grounds One and Three.

**Ground Four**

In Ground Four, Petitioner contends he did not knowingly or voluntarily waive all non-jurisdictional defenses. [Doc. 1 at 9–11.] More specifically, Petitioner argues the trial court failed to inform him that by entering a plea of guilty, he was waiving all non-jurisdictional defenses. [*Id.* at 9.] Respondents argue Petitioner is not entitled to relief on this ground because the colloquy between the judge and Petitioner satisfied the mandate set forth by the United States Supreme Court. [Doc. 21 at 36–39.]

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. *Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969). There is no Supreme Court authority requiring a trial court judge to specifically detail each right being waived before a criminal defendant's guilty plea can be deemed constitutionally valid. *See United States v. Stewart*, 977 F.2d 81, 84–85 (3d Cir. 1992) (collecting cases). Rather, the relevant inquiry is whether the circumstances surrounding the plea demonstrate that the defendant made a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Here, although the plea judge did not explicitly identify every right Petitioner was waiving by entering a guilty plea, a review of the plea colloquy indicates there is no basis to find that his guilty plea was involuntary. The plea judge had the following exchange with Petitioner:

> Q    And Mr. Sumner's your lawyer?
> A    Yes, sir.
> Q    Have you talked with him as often and for as long as you feel necessary for him to properly represent you?
> A    Yes, sir.
> Q    When you've talked with him have you understood your talks with him?
> A    Yes, sir.
> Q    Has he done everything for you that you've asked him to do?
> A    Yes, sir.
> Q    Has he done anything at all you didn't like?
> A    No, sir.
> Q    Are you fully and completely satisfied with his services?
> A    Yes, sir.
> Q    Do you have any complaint whatsover to make against your lawyer?
> A    No, sir.

26

Q      Now, has anyone used any force or made threats against you in order to get you to plead guilty?

A      No, sir.

Q      Has anyone promised you a lighter sentence if you pled guilty?

A      No, sir.

Q      Has anybody promised you anything for pleading guilty?

A      No, sir.

Q      All right.  You're pleading guilty voluntarily, that is of your own freewill?

A      Yes, sir.

Q      Now you understand that with respect to the trafficking marijuana this is 10 pounds, first offense, the sentence is not less than one no more than 10 years, mandatory fine of $10,000, do you understand that?

A      Yes, I do.

Q      Now with respect to the trafficking cocaine, 28 grams, first offense, the sentence is not less than seven no more than 25 years and a mandatory fine of $50,000; do you understand that?

A      Yes, sir.

Q      And you still want to plead guilty?

A      Yes, sir.

Q      Now you don't have to plead guilty.  You've got a perfect right to continue your jury trial, do you understand that?

A      Yes, sir.

Q      If you continue your jury trial your lawyer will have the right to cross-examine all the rest of the witnesses who testified against you, you would not have to take the stand and testify or present evidence because that is your Constitutional right.  The burden will remain on the State to prove you guilty beyond a reasonable doubt; do you understand those rights?

A      Yes, sir.

Q      You give up all those rights when you plead guilty?

A      Yes, sire, I'm aware of that.

Q      Is that what you want to do?

A      Yes, sir.

Q      Are you under the influence of any alcohol, drugs or any other substance right at this moment?

A      No, sir.

Q      You're sober?

A      Yes, sir.

Q      You know what you're doing?

A       Yes, sir.
Q       You want to plead guilty?
A       Yes, sir.
Q       You knew what you were doing was wrong or against
        the law?
A       My involvement in this is no doubt and I'm pleading
        guilty to it.
Q       So you knew what you were doing was against the law?
A       Yes, sir.
Q       All right.

[App. 430–32.]  Petitioner confirmed during the colloquy that he understood the rights he was waiving and that he was satisfied with counsel's representation of him.  He never indicated that he did not understand the proceedings or the implications of his guilty plea.  Accordingly, the plea colloquy complies with *Boykin*, and Petitioner is not entitled to habeas relief on this ground.[13]   *See United States v. Broce*, 488 U.S. 563, 573 (1989) ("Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty.  Waiver in that sense is not required.").

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondents' motion for summary judgment be GRANTED and the Petition be DENIED.

---

[13] The Court notes that a knowing and voluntary guilty plea waives all but jurisdictional claims up to the time of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973) (holding that a guilty plea represents a break in the chain of events which has preceded it in the criminal process); *Boykin*, 395 U.S. at 243 (finding that a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial)).  This waiver includes constitutional claims and effectively forecloses most claims from collateral attack.  *See Broce*, 488 U.S. at 569.  The plea colloquy does not support a finding that Petitioner's guilty plea was not knowingly and voluntarily entered, and Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [*McMann v. Richardson*, 397 U.S. 759 (1970)]."  *Tollett*, 411 U.S. at 267.  Although Petitioner attempts to raise a claim in this federal habeas petition that his counsel was ineffective for failing "to explain evidence against me and the ramifications of going to trial or pleading guilty" [Doc. 1 at 6], as discussed *supra*, such claim is procedurally barred from review in this federal habeas petition.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 23, 2013
Greenville, South Carolina